UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY BENTON,<br>　　　Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>　　　Respondent. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL CASE NO.<br>3:20-CV-01515 (JCH)<br><br><br><br>NOVEMBER 3, 2022 |

**RULING RE: PETITIONER'S MOTION TO VACATE SENTENCE
(DOC. NO. 1)**

**I.   INTRODUCTION**

In this habeas corpus petition, petitioner Jeffrey Benton ("Mr. Benton") moves to vacate his sentence pursuant to section 2255 of title 28 of the United States Code. See Mot. to Vacate, Set Aside, or Correct Sent. ("Pet.'s Mot.") (Doc. No. 1); see also Mem. of Law in Support of Mot. to Vacate, Set Aside, or Correct Sent. ("Pet.'s Mem.") (Doc. No. 4); Reply to Opp. to Mot. to Vacate, Set Aside, or Correct Sent. ("Pet.'s Reply") (Doc. No. 12).  Respondent United States ("the government") opposes this motion.  See Opposition to Mot. to Vacate, Set Aside, or Correct Sent. ("Resp.'s Mem.") (Doc. No. 11).

For the reasons set forth below, Mr. Benton's Motion (Doc. No. 1) is denied.

**II.   BACKGROUND**

The facts of this case are uncontested.  On August 30, 2013, Mr. Benton pled guilty in Case No. 3:12CR104(EBB) (hereinafter "2012 CT Case") to a charge of conspiracy to "possess with intent to distribute, and to distribute, 100 grams or more of a mixture containing a detectable amount of heroin" between January 2011 and January 2012, in violation of sections 841(a)(1) and 846 of title 21 of the United States Code.

Pet.'s Mem. at 2–3; see also 2013 Plea Agreement, Pet.'s Ex. B at 1 (Doc. No. 4-1). The case was before U.S. District Judge Ellen B. Burns of the District of Connecticut, who sentenced Mr. Benton to 108 months' imprisonment on November 21, 2014. Pet.'s Mem. at 3.

    A.    2015 Cases and Plea

While serving his sentence in the 2012 CT Case, Mr. Benton was indicted two more times in cases that were ultimately assigned to the undersigned. The first Indictment was returned on February 20, 2015, in the District of Maine: Mr. Benton was charged with "conspiring to possess with intent to distribute cocaine base" and "conspiring to obtain firearms by making false statements and representations", beginning on or before January 1, 2010 and continuing until August 30, 2013. Id. at 3–4; see also 2015 ME Case Indictment, Pet.'s Ex. C (Doc. No. 4-1). The case (hereinafter "2015 ME Case") was transferred to this court, on consent, on March 24, 2016. Pet.'s Mem. at 3–4.

The second Indictment was returned on September 30, 2015, before a grand jury in the District of Connecticut, alleging, as pertains to Mr. Benton's Petition before this court in the instant case, that Mr. Benton engaged in (1) "a pattern of racketeering activity" including violent crimes and conspiracy to commit murders in aid of said activity during a period from approximately 2011 to 2015; (2) money laundering in 2011; and (3) "possession with the intent to distribute and distribution of crack cocaine" in Connecticut and Maine from approximately 2011 to 2012. Id.; see also 2015 CT Case Indictment, Pet.'s Ex. D (Doc. No. 4-1). During pretrial proceedings in that case (herein after "2015 CT Case"), the government expressed an intention to introduce evidence of "recorded calls intercepted during the investigation of the drug trafficking activity charged in the

[2012 CT Case, as well as] . . . evidence seized incident to [Mr. Benton]'s arrest" in the 2012 CT Case.  Id. at 4–5.

Neither the 2015 CT Case nor the 2015 ME Case went to trial because, on March 17, 2017, Mr. Benton entered into a plea agreement pursuant to Federal Rule of Civil Procedure 11(c)(1)(C) covering both Cases.  Id. at 5.  In the Agreement, Mr. Benton pled guilty to (1) engaging in a pattern of racketeering activity and (2) money laundering in the 2015 CT Case, and, in the 2015 ME Case, to (3) "conspiring to possess with intent to distribute 280 grams or more of cocaine base" between approximately January 1, 2010, and August 30, 2013, "in the district of Maine and elsewhere."  Id.; see also 2017 Plea Agreement, Pet.'s Ex. F (Doc. No. 4-1).  In exchange for these guilty pleas, Mr. Benton and the government agreed that, if the court accepted the Agreement, the court would "impose an incarceration term of at least 360 months, and not more than 480 months in prison."  2017 Plea Agreement at 7.  The maximum Mr. Benton faced for each offense was (1) life in prison, (2) twenty years' imprisonment, and (3) life in prison, respectively.  Id. at 4–5.

Because the time period during which, and facts under which, Mr. Benton committed the pled-to crimes in the 2015 ME Case and the 2015 CT Case overlapped with that of the 2012 CT Case for which Mr. Benton was then incarcerated, the 2017 Plea Agreement further provided that Mr. Benton "reserve[d] his right to argue both" (1) "that he should receive credit towards his sentence in this case for time served back to his May 17, 2012 federal arrest in the [2012 CT Case] and" (2) "that the sentence in this case should be served concurrent to the remaining portion of the sentence in the [2012

3

CT Case]." Id. at 8.  The government, in turn, would "defer to the [c]ourt's discretion" on both issues.  Id.

The Plea Agreement also contained a Waiver Provision.  The Waiver stated that Mr. Benton "agree[d] not to appeal or collaterally attack in any proceeding[,] . . . including . . . a motion under [section] 2255[,] . . . the conviction or sentence imposed by the [c]ourt if that sentence [did] not exceed 480 months' imprisonment[,] . . . even if the [c]ourt impose[d] such a sentence based on an analysis different from that specified [in the Agreement]."  Id.  The Waiver provided further that Mr. Benton also agreed not to "appeal or collaterally attack" the court's decision of whether to (1) give Mr. Benton "credit toward his sentence back to the date of his arrest in the [2012 CT Case]" or (2) "impos[e] a sentence of imprisonment concurrently or consecutively . . . with any other sentence."  Id.  Finally, the Waiver stated that it would not "preclude [Mr. Benton] from raising a claim of ineffective assistance of counsel in an appropriate forum."  Id.

B.   Sentencing

This court sentenced Mr. Benton on October 4, 2017, after hearing argument from one of Mr. Benton's attorneys,[1] Francis L. O'Reilly ("Attorney O'Reilly"), on the issues, inter alia, of whether to sentence Mr. Benton concurrent to his 2012 CT Case imprisonment and to grant credit for the time he had already spent in prison.  Pet.'s Mem. at 7–8; Sentencing Transcript, Pet.'s Ex. G at pp. 18–43, 120–25 (Doc. No. 4-1).  Attorney O'Reilly argued, inter alia, that the court should consider the 2012 CT Case to be "relevant conduct" under United States Sentencing Guidelines ("U.S.S.G.") Manual

---

[1] Appearing on behalf of Mr. Benton were Attorneys Francis L. O'Reilly and Bruce D. Koffsky. See Sentencing Transcript, Pet.'s Ex. G. at p. 1 (Doc. No. 4-1).

4

section 1B1.3, which would in turn trigger section 5G1.3(b).  Section 5G1.3(b) provides, in relevant part, that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the court shall" (1) "adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment"; and (2) impose "the sentence for the instant offense . . . to run concurrently to the remainder of the undischarged term of imprisonment."  U.S. SENT'G GUIDELINES MANUAL § 5G1.3(b) (U.S. SENT'G COMM'N 2021); see also Sentencing Transcript at 18:13–32:8 (Attorney O'Reilly arguing in favor of concurrent sentencing and jail credit).  If the court agreed that the 2012 CT Case was relevant conduct, Attorney O'Reilly argued on Mr. Benton's behalf, it should give Mr. Benton credit dating back to his arrest in 2012 and impose whatever sentence the court gave in this case concurrent to that of the 2012 CT Case.

The court did not agree.  Of particular note, the court explained that the Guidelines are not mandatory, so even if the court did find that the 2012 CT Case constituted relevant conduct under the Guidelines,[2] the court would not have been

---

[2] The court did consider whether the 2012 CT Case was actually "relevant conduct" and decided that it was not.  See, e.g., Sentencing Transcript at 122:1–17 ("With respect to whether it is a common scheme or plan, there are no common victims.  The drug distribution in particular was a different geographical area.  There are no common accomplices that [the court is] aware of.  Only Kevin Wilson was the accomplice in 2012. . . .  Although arguably common purpose was gaining money for himself or the gang, that definition of common purpose is too broad.  Monetary gain is often the purpose of criminal conduct including entirely distinct conduct. . . .  Finally, as far as differences go, the modus operandi was different.  One scheme involved the legal [sic] heroin dealing.  The other involved transporting crack cocaine to Maine and transport of weapons to Connecticut.").  However, the court ultimately determined that other 3553(a) factors—namely the nature and circumstances of the crime—weighed heavily against Mr. Benton's request for a concurrent sentence with credit for time served, and the court exercised its discretion under the Guidelines and the Plea Agreement in sentencing Mr. Benton as it did.  See, e.g., Sentencing Transcript at 125:18–25, 130:13–17.

5

required to follow 5G1.3[3] to impose the sentence concurrently to that of the 2012 CT Case, nor to give Mr. Benton jail credit. "[I]n [the court's] view, 5G1.3 is [an] advisory guideline and, thus, [the court] believe[s] that [it] ha[s] discretion whether to apply it or not. . . . [The court] will have the power to credit him and run the sentence concurrently remaining to the [20]12 sentence." Sentencing Transcript at 125:18–25. The court explained that "[s]ection 3584 [of t]itle 18 provides that [the court] may exercise discretion in choosing to sentence a defendant to concurrent or consecutive sentences including with respect to undischarged terms of imprisonment. It further provides that in making that judgment, [the court] should consider the factors articulated in [section] 3553(a)[.]"[4] Id. at 126:7–12.

---

[3] The court also noted that it was not required to apply 5G1.3 if it accepted the 11(c)(1)(C) Plea Agreement because the Agreement "specifically [stated that Mr. Benton] reserves his right to argue" the issues of concurrence and credit. Sentencing Transcript at 130:8. The court's "reading of the Plea Agreement[,] in terms of [the court's] decision to accept [the Agreement, was that it] explicitly left the question of 5G and [ ] of concurrent versus consecutive open for the court to decide." Id. at 130:10–12. This reading was affirmed by the Second Circuit in Mr. Benton's appeal:

> Given that Mr. Benton reserved his right to argue that his new sentence should be imposed concurrently with his 2012 sentence and that he should get credit for time served, while the government agreed to abide by the district court's decision, <u>clearly the parties understood</u> that the district court had discretion to decide those questions either way.

Benton, 765 Fed.App'x at 481 (emphasis added).

[4] In relevant part, section 3584 provides:

> if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders . . . that the terms are to run consecutively. . . . The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

18 U.S.C. § 3584; see also United States v. Booker, 543 U.S. 220, 245 (2005) ("sever[ing] and excis[ing]" the "provision of the federal sentencing statute that makes the [federal sentencing g]uidelines mandatory", making "the federal sentencing statute . . . effectively advisory" except that "[i]t requires a sentencing court to consider Guidelines ranges, . . . but it permits the court to tailor the sentence in light of other statutory concerns as well, [per section] 3553(a)").

6

Before sentencing Mr. Benton, this court noted the seriousness of the violence involved in his crimes.  Speaking to Mr. Benton directly, the court said:

> Obviously [the court] need[s] to speak the names of the victims . . . here. You attempted to murder Mr. Williams.  You were involved in and I believe provided the . . . gun to the shooter.  And [your associate, Mr. Padilla,] shot Mr. Lee on the doorstep of his home [when you all attempted] to rob him . . . .  You yourself shot Donell Allick.  We've heard a lot about the details and it is. [. . .  The court doesn't] know what you can think about the fact that you have a beef with Cooper and so you are out looking for him but oh, by the way, let's shoot Mr. Allick because he sold me bad drugs.  [The court doesn't] know.  I can't appreciate that kind of thought process.  That would have led you in such a cowardly way [to] shoot through a window in the dark of night so he can't shoot you and shoot him in his back. . . .  And then the murder of Mr. Cooper . . . .  Lastly[,] you ordered the murder of Donald B[olden]. . . .  As I say the magnitude of it and the senselessness of it, I can't think of any other words.

Sentencing Transcript at 113:11–114:2, 114:8, 114:13, 114:19–20; see also Revised Presentence Report ¶ 20, United States v. Benton, et al., 3:15cr174(JCH) (filed on Oct. 10, 2017) (Doc. No. 353).  The court's "decision about whether to accept [Mr. Benton's] Plea [A]greement and what to sentence [him] to [was] driven in very large part by the violent acts he committed[.]" Sentencing Transcript at 129:1–3.  Mr. Benton "could have faced the 360 [month] guideline sentence just for the drugs even done one to one", the court reasoned, which would not "address the factors of these four human beings who are no longer and the fifth who suffered great injury and nearly lost his life."  Id. at 131:9–12.

The court explained that the "simplest reason why [it chose] not to exercise [its] discretion to apply 5G[1.3] to the sentence that [it] impose[d] within the [Plea Agreement's] range is because of the [3553(a)] factors." Id. at 130:13–17.  If the court had chosen to exercise its discretion to apply 5G1.3, thereby sentencing concurrently and with credit, Mr. Benton would receive a sentence that would "effectively become [a

7

sentence of] something like 21 years[.]" Id. at 130:19–20.  The court felt that was "not an appropriate and just sentence in light of [the 3553(a)] factors." Id. at 130:20–21.

This court did ultimately accept Mr. Benton's Rule 11(c)(1)(C) Plea Agreement, but it noted that it "would not accept the 11(c)(1)(C) unless [it] imposed . . . a sentence of 480 months without credit and without concurrence." Id. at 130:22–24.  The court also reviewed all the pertinent 3553(a) factors, see, e.g., Sentencing Transcript at 5:3–7:16, 126:7–12.  With regard to the "disparate sentences" factor described in title 18 United States Code section 3553(a)(5), the court stated, "I also need to consider – well, I have to consider the avoidance of unwarranted sentencing disparities.  That's hard in some respects but not hard because, as I say, I don't know of a case with this number of murders and assaults with this type of gang activity." Sentencing Transcript at 115:1–10.  While brief, the court reflected on the two other 11(c)(1)(C) agreements in this case.  They involved defendants Robert Short and Trevor Murphy, who each pled guilty to crimes: Mr. Short murdered Darrick Cooper at Mr. Benton's instruction, and Mr. Murphy killed Joseph Zargo in the commission of a robbery in furtherance of the criminal enterprise.  See 2015 CT Case Indictment at pp. 10–11; Short Plea Agreement at 4, United States v. Benton et al., 3:15-cr-174(JCH) (filed on Mar. 21, 2017) (Doc. No. 301) ("Short Plea"); Murphy Plea Agreement at 5, United States v. Benton et al., 3:15-cr-174(JCH) (filed on Feb. 8, 2017) (Doc. No. 226) ("Murphy Plea").  Their respective 11(c)(1)(C) agreements requested that the court sentence each defendant to 30 years.  Short Plea at 5; Murphy Plea at 5.  The court viewed the outcome sought by Mr. Benton—one amounting to an effective sentence of twenty-one years for leading a massive drug and firearm enterprise in which Mr. Benton directed three murders, one

person's assault, and he himself murdered one person—as unreasonable and disparate, at least as compared to his co-defendants.  See, e.g., Sentencing Transcript at 131:9–12.  The court therefore sentenced Mr. Benton to a total effective sentence of 480 months of imprisonment, without credit, to run consecutively from the end of Mr. Benton's 2012 sentence, followed by a term of five years Supervised Release.  Id. at 131:13–132:1.

### C. Direct Appeal

Mr. Benton filed an appeal of his sentence to the Second Circuit on October 13, 2017.  See Brief for Defendant-Appellant Jeffrey Benton at 5, United States v. Benton, 765 Fed. App'x 477 (2d Cir. 2019) (No. 17-3328).  In his brief, Mr. Benton argued, inter alia, first, that this court "erred in finding that the conduct that formed the basis for Mr. Benton's prior conviction in [the 2012 CT Case] was not relevant conduct to the conduct underlying Mr. Benton's convictions in [the 2015 ME Case] and [the 2015 CT Case]", and, second, that this court "procedurally erred in not complying with the directives of U.S.S.G. § 5G1.3(b)" by failing to "order that Mr. Benton's sentences in [the 2015 ME Case and the 2015 CT Case] be concurrent with his sentence in [the 2012 CT Case]."  Id. at iii.

In a Summary Order published on March 8, 2019, the Second Circuit explained that "the appeal waiver in Mr. Benton's plea agreement . . . squarely forecloses [the] claim" that this court "erred at sentencing and that [Mr. Benton was] entitled to press [the] argument on appeal."  Benton, 765 Fed. App'x at 480.  The Court concluded that:

> Mr. Benton specifically agreed not to appeal a sentence within the binding range 'even if the court imposes a sentence based on an analysis different from that specified' in the agreement itself. . . .  The district court's sentence was within the agreed-upon range, and thus its different analysis regarding his adjusted offense level does not constitute a rejection of the agreement

9

> . . . . [W]e conclude that Mr. Benton's appeal waiver remains enforceable. We therefore decline to entertain his argument that the district court erred in calculating and imposing his sentence.

Id. at 481 (internal citations omitted).

Mr. Benton filed the instant action, pursuant to section 2255 of title 28 of the United States Code, on December 5, 2020. See Pet.'s Mot.

### III.   LEGAL STANDARD

Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Therefore, relief is available "under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). The petitioner bears the burden of proving that he is entitled to relief by a preponderance of the evidence. See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

### IV.   DISCUSSION

#### A.   Plea Waiver

The government argues that this court "should not permit [Mr. Benton] to relitigate an issue raised at sentencing and on direct appeal under the guise of ineffective assistance of counsel[.]" Resp.'s Mem at 7. Although Mr. Benton's Waiver explicitly reserved his ability to raise a claim of ineffective assistance of counsel, the

10

government asserts that he has merely "refashion[ed] his collateral attack as an ineffective assistance of counsel claim", and that allowing Mr. Benton's claim to go forward would be "inconsistent with the Second Circuit's admonition that courts not permit criminal defendants to circumvent appellate and collateral attack waivers." Id. at 9.

"It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998) (collecting cases).  The Second Circuit has been clear that, "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement", for doing so would "render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

The Second Circuit has not ruled on the applicability of a waiver containing the exact language as that of this case—specifically, one that waives collateral attacks but reserves the right to raise an ineffective assistance of counsel claim.  It has, however, taken the opportunity to speak on the issue of whether a criminal defendant "should be entitled to challenge his sentence on the ground that his attorney rendered ineffective assistance of counsel at sentencing, notwithstanding [the defendant's] unequivocal waiver of his right to appeal any sentence within the stipulated Sentencing Guideline range" contained in a knowingly and voluntarily signed waiver agreement.  See United States v. Djelevic, 161 F.3d 104, 105 (2d Cir. 1998).

In Djelevic, the defendant was sentenced to a term of imprisonment within the range stipulated to in his Plea Agreement.  Despite the Agreement's waiver, the defendant appealed his sentence, claiming in part that it "should be vacated . . . because he received ineffective assistance of counsel at sentencing given his attorney's failure to seek enforcement of the agreement to avoid the use of multiple grouping analysis in calculating [the] guideline range[.]"  Id. at 106.  The Circuit Court reasoned that, "despite [the defendant's] effort to dress up his claim as a violation of the Sixth Amendment, [the defendant] in reality [was] challenging the correctness of his sentence under the Sentencing Guidelines[.]"  Id. at 107.  Because the waiver agreement in Djelevic stated that it applied, as does Mr. Benton's Plea Agreement, "even if the [trial court] employ[ed] a Guidelines analysis different from that stipulated to" in the Agreement, the Second Circuit held that the defendant's claim was "barred by the plain language of the waiver[.]"  Id. at 106, 107.  The Djelevic Court therefore declined to reach the merits of the defendant's ineffectiveness claim because, if it "were to allow a claim of ineffective assistance of counsel as a means of circumventing the plain language in a waiver agreement[,] the waiver of appeal would be rendered meaningless."  Id. at 107.

Since Djelevic, district courts within this Circuit have continued to hold that appellate waivers preclude similar kinds of ineffective counsel claims, even in cases, like the one at bar, where the criminal defendant's waiver expressly reserved the right to raise a claim of ineffective assistance of counsel.  See Cannonier v. United States, No. 15-CR-95 (AJN), 2021 WL 809343, at *4 (S.D.N.Y. Mar. 3, 2021) (collecting cases); see

also Gomez v. United States, No. 16 CR. 797 (LAP), 2021 WL 5113335 (S.D.N.Y. Nov. 3, 2021).

In Cannonier v. United States and Gomez v. United States, courts in the Southern District of New York considered, inter alia, claims of ineffective assistance of counsel raised in habeas petitions by criminal defendants whose waivers were remarkably similar to that of Mr. Benton in this case.  See Cannonier, 2021 WL 809343, at *1 (defendant's waiver reserving "whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise"); Gomez, 2021 WL 5113335, at *1 (noting that the language of defendant plea "waive[d] his right to a direct appeal and a collateral challenge if he received a sentence within or below the Stipulated Guidelines Range but maintained his right collaterally to attack his sentence on ineffective assistance of counsel grounds").  Both defendants were sentenced within the ranges stipulated in their respective plea agreements, and both argued ineffective assistance of counsel claims that were "best understood as targeting the sentence that the court imposed rather than [their] counsel's performance[.]"  Gomez, 2021 WL 5113335, at *4 (citing Cannonier); Cannonier, 2021 WL 809343, at *3.  Both courts denied the defendants' habeas petitions as being barred by the respective waiver agreements.  Gomez, 2021 WL 5113335, at *4–5 ("[Defendant] is attacking the sentence itself through his ineffective assistance of counsel claim[, thus] . . . the waiver contained in the Plea Agreement applies to [the] entire motion, which is therefore barred."); Cannonier, 2021 WL 809343, at *4 ("[Defendant]'s petition is denied because he waived his right to collaterally attack

his sentence when he knowingly and voluntarily entered into the plea agreement and because his ineffective assistance of counsel claims target the sentence imposed[.]").

The court holds the same here. Mr. Benton argues that, but for Attorney O'Reilly's failure to marshal certain facts and arguments at sentencing, the court would have come to the "ineluctable conclusion that of [sic] U.S.S.G. § 5G1.3(b) applied and that a concurrent sentence, at least in part, was required". Pet.'s Mem. at 16. Though nominally labelled an ineffective assistance of counsel claim, this argument is challenging the court's decision not to sentence as Mr. Benton sought. Like the defendants in Gomez and Cannonier, Mr. Benton has dressed up his argument of sentencing error as one of ineffective assistance of counsel in the hopes that the court will allow his Petition despite the Plea Agreement's promise not to collaterally attack the sentence. The court declines to do so. Mr. Benton's waiver promising not to collaterally attack the court's choice not to credit the time served in the 2012 CT Case and to sentence him consecutively "remains enforceable": his habeas is effectively a collateral attack on this court's decision to do just that. Benton, 765 Fed. App'x at 481.

The court therefore denies Mr. Benton's Motion (Doc. No. 1) as barred by the collateral attack waiver in his Plea Agreement.

B.   Ineffective Assistance of Counsel

In the alternative, reaching the merits of Mr. Benton's claim, this court denies the Petition. Mr. Benton argues that Attorney O'Reilly "rendered ineffective assistance by inadequately and ineffectively presenting relevant facts and law" to this court "demonstrating that the offenses charged in [the 2012 CT Case], for which Mr. Benton received and is presently serving a sentence of 108 months' imprisonment, constituted 'relevant conduct' to the offenses charged for purposes of Sentencing Guidelines §

14

5G1.3(b)." Pet.'s Mem. at 2. "The sentence", Mr. Benton continues, "was required to run concurrently with the sentence stemming from Mr. Benton's prior conviction pursuant to" section 5G1.3(b). Id. The government argues in response that Mr. Benton cannot establish that Attorney O'Reilly's "representation fell below an objective standard of reasonableness", nor "that the results of the proceeding would have been different" if Attorney O'Reilly had argued as outlined in Mr. Benton's brief. Resp.'s Mem. at 9, 13.

To succeed on an ineffective assistance of counsel claim, a petitioner "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." Harrington v. United States, 689 F.3d 124, 129 (2d Cir.2012) (citing Strickland v. Washington, 466 U.S. 668, 687–88 (1984)) (the "Strickland test"). If a petitioner fails to satisfy either prong, the court does not need to consider the other. See Strickland, 466 U.S. at 697.

        1.     First Strickland Prong

Mr. Benton argues that, "while trial counsel were zealous advocates for Mr. Benton, the record reveals that they were not prepared adequately either factually or legally to address the Court's authority under U.S.S.G § 5G1.3(b) to impose a concurrent sentence." Pet.'s Mem. at 11. The government, in contrast, argues that Attorney O'Reilly "argued forcefully, and at length, that [Mr. Benton's] conduct in the 2012 CT Case was relevant conduct under [5G1.3] and thus his sentences . . . should be imposed concurrently to that sentence." Resp.'s Mem. at 11. While Mr. Benton sets forth "[e]vidence and facts that should have been[, but were not,] cogently and persuasively presented to the [c]ourt at sentencing", Pet.'s Mem. at 14, the government

15

counters that everything Mr. Benton argues was either "considered and rejected by the [c]ourt or [was] strategically not raised." Resp.'s Mem. at 11.

The court agrees with the government as to the first point. Attorney O'Reilly did argue the issue of 5G1.3's applicability—indeed, fourteen pages of the Sentencing Transcript are devoted to just that subject. See Sentencing Transcript at 18:13–32:8. Contrary to Mr. Benton's argument, Attorney O'Reilly aggressively advanced the 5G1.3 argument. See Sentencing Transcript at 18:13–32:8. He eventually correctly realized this court was firmly of the view that the 2012 CT Case was not "relevant conduct", as described in the Guidelines, and shifted his argument's focus. The Sentencing Transcript reflects this:

> MR. O'REILLY: I would end with that it's true that the guidelines are discretionary and [the court] ha[s] discretion.[5] I think 5G3.1(b) uses the word shall, and I think it's about equity maybe.
>
> THE COURT: That's what I was trying to say earlier to you. I think that's the way you need to frame it.
>
> Mr. O'REILLY: I never got that far because we got side-tracked.
>
> THE COURT: Go ahead and make that argument. I'm not trying to stop you.
>
> MR. O'REILLY: No. But you asked about relevant conduct and we went down that rabbit hole. He's been in since May 17, 2012, on very similar activity. I don't want to go down that hole again, but on very similar activity and he received a 108 [month] sentence. If your honor is considering imposing the sentence today and not giving him credit for that five years that he served and the additional [time left] . . ., you will, in effect, be giving

---

[5] While Mr. Benton does not, in his Memoranda, acknowledge the court's discretion on this matter, the Second Circuit emphasized that such discretion was implicit in Mr. Benton's Plea Agreement:

> Given that Mr. Benton reserved his right to argue that his new sentence should be imposed concurrently with his 2012 sentence and that he should get credit for time served, while the government agreed to abide by the district court's decision, clearly the parties understood that the district court had discretion to decide those questions either way.

Mr. Benton, 765 Fed. App'x at 481. Additionally, 5G3.1 is not mandatory. See U.S. v. Booker, 543 U.S. 220, 245 (2005) ("[T]he Guidelines [are] effectively advisory.").

16

him an additional nine-year sentence for conduct that ended by the Government's own agreement on May 17, 2012. . . . You should run the remainder of his sentence concurrent to the remaining portion of the sentence that Judge Burns imposed. That's essentially the appropriate way to impose the sentence in this case. And so we can get caught up in the legalities of whether it is relevant conduct. I certainly think it is. . . . When you are punishing him for all of that conduct is it appropriate to say ["]yes, I think 360 months plus 108 months is appropriate["?] . . . [T]hat comes out to 468 months or something[.] I don't think that's the right sentence because [it's] within the 480 cap. It is . . . the right sentence for this entire conduct. The entire drug dealing, the violence and everything else that Your Honor is considering today[,] and that total sentence should fall within that—should be credited towards the appropriate sentence in this case because all of the conduct is so inextricably intertwined."

Sentencing Transcript at 40:17–41:12, 41:23–42:3, 42:10–42:19.

In assessing the first prong of the Strickland test, the question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (emphasis added) (citing Strickland, 466 U.S. at 690). While the court did not ultimately agree with Attorney O'Reilly, his insight into this court's view of certain arguments and his ability to adapt accordingly was skilled. Attorney O'Reilly's representation of Mr. Benton at sentencing was nowhere near incompetent—indeed, it was quite competent. Mr. Benton's ineffective assistance claim, therefore, fails at the first prong.

Critically, however, even if Mr. Benton is correct that Attorney O'Reilly should have better marshalled the facts and arguments as outlined in his habeas brief, the simple fact is that it is nonetheless impossible for Mr. Benton to establish the second Strickland prong that a "better advocacy" would have made any difference at all.

17

      2.      Second <u>Strickland</u> Prong

Mr. Benton contends that, had Attorney O'Reilly "raised [the arguments mentioned in Mr. Benton's Habeas briefs] appropriately, . . . it is probable that the [c]ourt would have determined that the [2012 CT Case, the 2015 ME Case, and the 2015 CT Case] involved relevant conduct and ordered that Mr. Benton serve his sentences concurrently." Pet.'s Reply at 5. The government disagrees, arguing that Mr. Benton has not "established that he would have received a lesser sentence" because this court "specifically stated that it would have imposed the same sentence as a matter of discretion even had it determined that the 2012 [C]ase was relevant conduct." Resp.'s Mem. at 2; <u>see also</u> Sentencing Transcript at 125:14–17. The court agrees.

Under the second prong of the <u>Strickland</u> test, a petitioner is required to establish that his case was actually prejudiced by his counsel's failures. To show the requisite prejudice, at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is [one] sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

At sentencing, this court made clear several times that, "even if the 2012 [Case wa]s relevant conduct to the . . . offenses that [the court was] sentencing on[,] . . . [it would choose] to exercise [its] discretion to not apply 5G1.3." Sentencing Transcript at 125:14–17. In addition to the reasons outlined in Section II(B), <u>supra</u>, this court explained:

> You can remove all of the allegations and the convictions for the drug dealing, take the drug quantity out of your guideline calculation, take the gun dealing out of your calculations[—the court is] not saying [it's] ignoring that at sentencing[—]but its seems to [the court] that [it] would probably

18

>     come to the same result looking just at the violent conduct[. S]o it strikes [the court] as odd to suggest that because [Mr. Benton] got convicted before the Government was able to uncover [his] violent conduct, [he] w[as] convicted on a drug charge, it doesn't seem right to take [the sentence for the earlier drug case] away.

Sentencing Transcript at 129:5–14.  That the court decided not to apply 5G1.3(b) even if the 2012 CT Case constituted relevant conduct was clear: the court chose a sentence that fit the crimes, which notably included the murder of four people in the context of the drug dealing enterprise which Mr. Benton led.  See 2015 CT Case Indictment at 2–7; see also id. at 8–12.  Mr. Benton's argument is that, had Attorney O'Reilly argued well enough to convince this court that the 2012 CT Case constituted relevant conduct, the court would have reached the "ineluctable" conclusion that 5G1.3 applies and would have sentenced him concurrently rather than consecutively.  Pet.'s Mem. at 16.  The Sentencing Transcript makes clear that this court's decision did not hinge on the distinction of relevant versus non-relevant conduct: the court would have given the same sentence either way due in large measure to the violent nature of the crimes.  See Sentencing Transcript at 129:1–3 (stating that the court's "decision about whether to accept [Mr. Benton's] Plea [A]greement and what to sentence [him] to [was] driven in very large part by the violent acts he committed"); see also id. at 130:17–24 ("I would not accept the [Plea Agreement] unless I imposed upon you a sentence of 480 months without credit and without concurrence.").  Thus, Mr. Benton was not prejudiced by any allegedly deficient representation and the second prong of the Strickland test is unmet.

      In conclusion, it appears to the court that the entirety of Mr. Benton's argument can be reduced to the claim that, having expressly reserved to the court the discretion to determine whether the sentence should run concurrent to, or he should receive credit

for time served in, his 2012 sentence, see 2017 Plea Agreement at 8; Benton, 765 Fed. App'x at 481; Sentencing Transcript at 130:7–12, trial counsel was ineffective because he failed to persuade the court to exercise its discretion to sentence Mr. Benton concurrent to the sentence in the 2012 CT Case and give him time served credit. The court does not understand losing an argument to be ineffective assistance. Indeed, counsel for petitioner will lose his argument in this habeas corpus petition, and yet the court does not view him to have been ineffective. The court exercised its discretion for all the reasons set forth in the sentencing transcript, but most especially:

> [given] the nature and circumstances of [Mr. Benton's] crimes and the seriousness of what [he] did, . . . a sentence that would effectively become something like 21 years is not an appropriate and just sentence in light of [the 3553(a)] factors. Indeed it is [this court's] view that [it] would not accept the 11(c)(1)(C) unless [it] imposed upon [Mr. Benton] a sentence of 480 months without credit and without concurrence.

Sentencing Transcript at 130:17–24.

## V.   CONCLUSION

For the foregoing reasons, Mr. Benton's Motion to Vacate the Sentence (Doc. No. 1) is denied. Because Mr. Benton has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of November 2022.

                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge